**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIC POTTER, | Civil No. 10-4200 (GEB) |
| Plaintiff, | |
| v. | **OPINION** |
| WILLIAM J. FRASER, etc., et al., | |
| Defendants. | |

**APPEARANCES:**

    ERIC POTTER
    Monmouth County Correctional Institution
    1 Waterworks Rd.
    Freehold, NJ 07728

**BROWN, JR.**, Chief Judge:

Plaintiff, Eric Potter, a pretrial detainee incarcerated at Monmouth County Correctional Institution ("MCCI"), seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915. This Court will grant Plaintiff's application to proceed in forma pauperis and direct the Clerk to file the Complaint without prepayment of the filing fee. See 28 U.S.C. § 1915(a). Having reviewed Plaintiff's allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint, without prejudice to the filing of an amended complaint, and decline to exercise supplemental jurisdiction over claims arising under state law.

## I. BACKGROUND

Plaintiff asserts violation of his constitutional rights under 42 U.S.C. § 1983 by William Fraser (Warden of MCCI), Dr. Awad (jail physician), and seven correctional officers at MCCI, i.e. Lt. Baker, Sgt. Jones, and Officers Teif, Berringer, Pimentel, Hasslebauer, and Hislip. Plaintiff asserts that he was booked into MCCI on April 27, 2010. Allegedly, he spent almost 10 hours in the booking area, the holding cells were filthy and unsanitary, and the "toilets [were] so dirty that inmates only use them to urinate in them." (Docket Entry #1, p. 5.) Plaintiff asserts that on April 28, 2010, he asked Dr. Awad to treat him for drug withdrawal, but the "Doctor stated that the jail no longer prescribe[s] any medication for inmates who are going through withdrawal." (Id.) Plaintiff further states that Plaintiff expressed that he wished he were dead. He asserts that Dr. Awad placed him in the infirmary, which was filthy and, because there were six inmates and only three beds, Plaintiff's mattress was on the floor between two toilets. Plaintiff alleges that on one occasion he "woke up only to find another inmate urinating over his head." (Id. at 6.) Plaintiff further states that he "and the inmates sleeping in the infirmary cle[a]ned the room themselves." (Id.)

Plaintiff alleges that on April 29, 2010, Dr. Awad ordered blood work to be taken for Plaintiff's Hepatitis C, but the blood was not drawn until July 2010. "Plaintiff then told Dr. Awad that he would like to be treated for Hepatitis C, but the doctor told the Plaintiff that due to the cost and length of time for treatment that the jail doesn't treat inmates for Hepatitis C." (Id. at 6-7.)

Plaintiff further complains that inmates are only allowed 50 minutes a week in the law library. He asserts that on May 18, 2010, he asked Officer Hasslebauer for extra time in the law

library because he had to file documents in this Court by May 25, 2010, but Hasslebauer denied the request because the case was a civil case. Plaintiff states that, as a result, he "had to go back to [his] pod and write the document by hand that one night to meet the deadline [and] the document was 11 pages." (Id. at 8.)

Plaintiff further asserts that on May 23, 2010, at 6 a.m., Officer Hislip, Sgt. Jones and Officer Berringer "staged a fire drill" and searched the tier "because they believed that there were alleged gang members on the tier." (Docket Entry #1, p. 8.) Plaintiff alleges that Officer Berringer took Plaintiff's T-shirt and threw it in the garbage. Plaintiff asserts that on June 14, 2010, Sgt Jones and Officer Teif from the gang unit searched the unit again. "They placed all of the remedy forms [Plaintiff had submitted] on top of [his] bed along with all of the commissary receipts that [he] had on a pile on [his] bed side by side, and then took all of [Plaintiff's] commissary, including stamps and stamped envelopes." (Id. at 9-10.) Plaintiff concluded that Berringer took the T-shirt and officers confiscated the commissary items in retaliation for Plaintiff's filing the grievances and suggesting that other inmates file grievances.

Finally, Plaintiff asserts that he filed grievances complaining to jail officials with respect to each of these incidents, but responding officials supported the officers. "The Plaintiff has filed numerous appeals to the Warden with only one response and that appeal response was from Lt. Baker." (Docket Entry #1, p. 11.)

Plaintiff asserts that defendants violated his constitutional rights by subjecting him to unhygienic living conditions in the booking area and infirmary, failing to treat his Hepatitis C, denying adequate access to the law library, throwing Plaintiff's T-shirt in the garbage, taking his commissary items, conducting the searches, and retaliating for Plaintiff's filing grievances and

encouraging other inmates to submit grievances. Plaintiff seeks declaratory, relief, injunctive relief and damages.

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice .... Rule 8 marks a notable and generous departure from the hyper-technical, code-

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

4

> pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

## III. DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A. Conditions of Confinement

Plaintiff complains that the conditions in the booking area, where he spent 10 hours, and the infirmary, where he was confined for an unspecified period, were filthy and unsanitary. This Court construes these allegations as an attempt to assert a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.[2] The Fourteenth Amendment forbids

---

[2] "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Bell v. Wolfish, 441 U.S. 520, 537, n.16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977)); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244
(continued...)

6

states from denying "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "One must have an interest in life, liberty, or property before due process protections are triggered." Artway v. Attorney General of the State of New Jersey, 81 F.3d 1235 (3d Cir. 1996); see also Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). As the Supreme Court explained,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights." Bell, 411 U.S. at 546. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. The Fourteenth Amendment standard of

---

²(...continued)
(1983).

7

unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . . The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

In this Complaint, Plaintiff asserts that he spent 10 hours in the booking area, which was filthy and unsanitary. He was allegedly assigned to the infirmary for an unspecified number of days; the infirmary was dirty and he slept on a mattress on the floor between two toilets. To satisfy the objective component, an inmate must show that he was subjected to genuine privation and hardship over an extended period of time. See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"). Plaintiff's allegations do not satisfy the objective component because, as written, the Complaint does not show that he was subjected to genuine privation and hardship over an extended period of time. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months"); Hubbard, 538 F. 3d at

8

235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Piskanin v. Hammer, 269 Fed. App'x 159, 162-63 (3d Cir. 2008) (placement of pretrial detainee on suicide watch for brief six day period, during which time he could not contact counsel or file a habeas petition, did not amount to punishment prior to adjudication of guilt); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in maximum security did not violate due process). Because Plaintiff has not alleged that he was subjected to genuine privations and hardships over an extended period of time, his due process rights were not violated and this Court will dismiss this claim without prejudice.³

B. Medical Care

Plaintiff complains that Dr. Awad was deliberately indifferent to his serious medical needs because Dr. Awad did not prescribe medication for drug withdrawal and Hepatitis C. In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 538. That inquiry involves application of the Eighth Amendment deliberate indifference standard, insofar as "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides

---

³ If Plaintiff elects to file an amended complaint stating a due process claim, he should include specific facts regarding the duration and the conditions of confinement in the infirmary. See Pressley v. Blaine, 352 Fed. App'x 701 (3d Cir. 2009) (In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) the conditions of that confinement in relation to other prison conditions).

greater protections." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); see also Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (holding that "at a minimum the 'deliberate indifference' standard of Estelle v. Gamble, must be met"). "The standard enunciated in Estelle is two-pronged: '[i]t requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F. 2d 326, 346 (3d Cir. 1987) (citations omitted). To prevail on such a claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of serious harm," and that the defendant was deliberately indifferent to the risk. See Farmer v. Brennan, 511 U.S. 825, 833, 837 (1994). "To show deliberate indifference, a plaintiff must do more than simply allege medical malpractice or express disagreement regarding the treatment provided." Watkins v. Cape May County Correc. Center (Medical Dept.), 240 Fed. App'x 985, 986 (3d Cir. 2007) (citing Monmouth County Corr. Inst. Inmates, 834 F. 2d at 346). To establish deliberate indifference, a plaintiff must show that the individual was subjectively aware of the risk of harm to the plaintiff's health or safety, and simply disregarded it. See Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

In this case, Plaintiff alleges that Dr. Awad denied medication for drug withdrawal and Hepatitis C because the jail has a policy of not prescribing medication for drug withdrawal, and because inmates are generally not confined in the jail long enough to complete the expensive

treatment for Hepatitis C. Assuming that drug withdrawal and Hepatitis C are serious medical needs, as written, the Complaint fails to state a § 1983 medical care claim because the facts alleged in the Complaint do not show deliberate indifference. Plaintiff alleges that Dr. Awad did not prescribe medication for Plaintiff's withdrawal, but Plaintiff does not specify why he believed he needed medication and what medication he needed. Dr. Awad did not ignore Plaintiff's condition, but placed him in the infirmary, where he could be monitored and observed. Moreover, Plaintiff does not assert facts showing the severity of any symptoms, or that he complained to medical staff about certain symptoms, and his symptoms were ignored. "And to the extent that [Plaintiff] argue[s] that the medical professionals should have done more [for his withdrawal], or done it differently, or done it better, that is not deliberate indifference." Sylvester v. City of Newark, 120 Fed. App'x 419, 424 (3d Cir. 2005) (citing Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754, 760 (3d Cir. 1979)). Under these circumstances, Plaintiff has not plausibly asserted facts showing that any defendant was deliberately indifferent to his drug withdrawal symptoms. See Calozzo v. Koreman, 581 F. 3d 63, 72 (2d Cir. 2009) (nurse who incorrectly thought that inmate, who died from seizure due to acute alcoholism, was not in danger of an imminent severe alcohol withdrawal reaction was negligent, not deliberately indifferent); Fredericks v. Huggins, 711 F. 2d 31 (4th Cir. 1983) (holding that forcing inmates to undergo cold turkey withdrawal was not unconstitutional punishment of pretrial detainee where jail medical staff observed and charted the medical condition of detainees throughout withdrawal periods); Pierce, 612 F. 2d at 761 (jail policy whereby inmates who have been receiving methadone treatment prior to incarceration are given methadone treatment through their sixth day of confinement, after which treatment is terminated, was not deliberately indifferent: "It appears

to us that [] a legitimate security interest is [ ] present in the jail's restriction of methadone treatment. Drug use in jails or prison facilities is certainly of the utmost concern to jail and prison authorities. That is true whether the drug is heroin, marijuana, or methadone. The potential for jail or prison disruption caused by the presence of drugs is well-known. Thus, jail authorities have a legitimate security concern in limiting exposure of inmates to drugs, even those administered on a controlled basis"); Walker v. Fayette County, Pa., 599 F. 2d 573, 575-76 (3d Cir. 1979) (jail detainees have no constitutional right to methadone treatment for detoxification).

Plaintiff further asserts that on April 29, 2010, Dr. Awad ordered blood work to be taken for Plaintiff's Hepatitis C, but the blood was not drawn until July 2010. "Plaintiff then told Dr. Awad that he would like to be treated for Hepatitis C, but the doctor told the Plaintiff that due to the cost and length of time for treatment that the jail doesn't treat inmates for Hepatitis C." (Docket Entry #1 at 6-7.) It is clear that by ordering blood work, Dr. Awad did not ignore Plaintiff's Hepatitis C condition. Moreover, Plaintiff does not allege facts regarding the condition of his liver and the length of time necessary to provide Hepatitis C treatment, or showing that treatment for Plaintiff's condition at that time was medically warranted. Thus, Plaintiff's Complaint falls short of establishing that Dr. Awad was deliberately indifferent to Plaintiff's medical need for Hepatitis C treatment.

C. Access to Courts

Plaintiff complains that, because he is permitted only 50 minutes a week in the law library and defendant denied his request for extra time, he had to handwrite in one night an 11-page document due in court on May 25, 2010. He further asserts that during a search of his cell,

officers threw his legal papers on the floor. This Court construes these allegations as an attempt to assert a First Amendment access to courts claim.

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17). For example, in Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under Harbury. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

The Complaint before this Court suffers the same pleading deficiencies as the complaints in Monroe. Plaintiff does not assert facts showing that he lost a non-frivolous legal claim, and he does not assert facts showing he had no other remedy. Accordingly, this Court will dismiss the First Amendment access to courts claim.[4] See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost).

D. Personal Property

Plaintiff complains that Officer Berringer threw Plaintiff's T-shirt in the garbage, and that certain defendants destroyed his commissary items during a cell search. The Court construes these allegations as an attempt to assert that defendants deprived him of property without due process of law. However, this due process property claim fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides all the process that is due. The NJTCA provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison or jail officials. See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available remedy providing all the process which is due,

---

[4] To the extent that Plaintiff raises a due process claim based on the loss of his legal materials, that claim is also dismissed. In Monroe, the Court of Appeals dismissed the inmates' procedural due process claim on the grounds that pre-deprivation notice is not constitutionally required and the prison grievance procedure provided an adequate post-deprivation remedy for the loss. See Monroe, 536 F. 3d at 210.

14

Plaintiff's due process claim regarding the loss of his property fails and will be dismissed with prejudice. Id.

E. Search of Cell

Plaintiff asserts that certain defendants searched his cell on May 23, 2010, and June 14, 2010, "because they believed that there were alleged gang members on the tier." (Docket Entry #1, p. 8.) The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. However, the United States Supreme Court has held that "prisoners have no legitimate expectation of privacy." Hudson v. Palmer, 468 U.S. 517, 530 (1984).

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted); see also Bell, 441 U.S. at 558-560 (body cavity search of pretrial detainees after each contact visit does not violate the Fourth Amendment); Florence v. Bd. of Chosen Freeholders of County of Burlington, 621 F. 3d 296 (3d Cir. 2010) (routine strip searches of all arrestees upon jail admission does not violate Fourth Amendment). Because jail officials did not violate Plaintiff's Fourth Amendment rights when they searched his cell on two occasions, this Court will dismiss the Fourth Amendment claim with prejudice.

F. Retaliation

Plaintiff asserts that defendants retaliated against him for filing numerous grievances regarding conditions of confinement and other matters, and for encouraging other inmates to file grievances. An official who retaliates against an inmate for exercising his constitutional rights may be liable under § 1983. See Rauser v. Horn, 241 F. 3d 330, 333 (3d Cir. 2001). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" Hartman v. Moore, 547 U.S. 250, 256 (2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F. 3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted). To establish a causal link, the prisoner must show that the "constitutionally protected conduct was a 'substantial or motivating factor'" in the decision to take adverse action. Rauser, 341 F. 3d at 333-34 (quoting Mount Healthy City School Dist. B. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)). However, "once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest." Rauser, 241 F. 3d at 334 see also Carter v. McGrady, 292 F. 3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

16

Plaintiff's allegations satisfy the first element, as he engaged in conduct protected by the First Amendment by submitting non-frivolous grievances to prison officials. However, Plaintiff's allegations do not satisfy the second and third elements. Plaintiff asserts that certain defendants searched his cell on two occasions, threw his T-shirt in the garbage, and confiscated his commissary purchases, in retaliation for his grievances. However, the retaliation claims fail because these actions were not sufficiently adverse.[5] Moreover, they did not deter Plaintiff, who

---

[5] See Burgos v. Canino, 358 Fed. App's 302, 306-07 (3d Cir. 2009) (urinalysis, harassment, threats, temporary inconveniences, and denial of recreation did not rise to level of adverse action against prisoner); Couch v. Bd. of Trustees of Memorial Hosp. of Carbon County, 587 F. 3d 1223, 1243 (10th Cir. 2009) ("An investigation of potential misconduct . . . will generally not constitute an adverse employment action"); Bridges v. Gilbert, 557 F. 3d 541, 555 (7th Cir. 2009) ("single retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); Starr v. Dube, 334 Fed. App'x 341, 342-43 (1st Cir. 2009) (retaliatory filing of disciplinary charge that was dismissed one week later does not constitute adverse action); Walker v. Bowersox, 526 F. 3d 1186, 1190 (8th Cir. 2008) ("the two incidents when Knarr directed others to give Walker an alternative meal, although purportedly retaliatory, were not sufficiently severe to amount to a constitutional violation"); Morris v. Powell, 449 F. 3d 682, 685-86 (5th Cir. 2006) (prisoner's retaliatory job reassignment from the commissary to the kitchen for one week, with one day spent in the unpleasant pot room, was not sufficiently adverse to satisfy adverse action requirement because acts that cause only a "few days of discomfort," impose "a minor sanction" or an otherwise constitutional restriction on inmate are not sufficiently adverse); Ingram v. Jewell, 94 Fed. App'x 271, 273 (6th Cir. 2004) (neither loss of an extension cord, the cost of the cord, nor 14 days of lost privileges constitutes adverse action that would deter a prisoner of ordinary firmness from filing grievances); Gill v. Tuttle, 93 Fed. App'x 301, 303-04 (2d Cir. 2004) (to establish retaliation claim, inmate must allege adverse action that imposes a substantial impact on inmate); Smith v. Yarrow, 78 Fed. App'x 529, 541 (6th Cir. 2003) ("An isolated incident such as this is not likely to deter a p[risoner] of ordinary firmness from pressing on with his lawsuit"); Apanovitch v. Wilkinson, 32 Fed. App'x 704, 706-07 (6th Cir. 2002) (where "actions that the defendants allegedly took in response to the lawsuit may have made life more unpleasant for [plaintiffs, t]hey were not, however, so different from other inmates' conditions of confinement as to . . . act as a deterrent against filing lawsuits"); Jones v. Greninger, 188 F. 3d 322, 325-26 (5th Cir. 1999) (although retaliatory intent was properly alleged, claim that inmate was restricted to five hours per week in law library in retaliation for filing grievances failed because the alleged adverse acts did not rise to level of constitutional claim); Thaddeus-X v. Blatter, 175 F. 3d 378, 398 (6th Cir. 1999) ("Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than

(continued...)

continued submitting grievances complaining of defendants' conduct. And to the extent that Plaintiff contends that the cell searches were retaliatory, the First Amendment claim fails because prison officials acted in furtherance of at least one legitimate governmental interest - security - since Plaintiff alleges that defendants thought there were gang members on the tier. Thus, the Complaint, as written, fails to assert facts under the Iqbal plausibility standard establishing a retaliation claim, and this claim will be dismissed.

### G. Failure to Properly Respond to Grievances

Plaintiff complains that the failure of the Warden and other officials to properly respond to his grievances, or to fully outline the administrative remedy procedures, violates his constitutional rights. This Court construes these allegations as an attempt to state a claim under the Petition Clause of the First Amendment and/or the Due Process Clause of the Fourteenth Amendment. However, "[p]risoners do not have a constitutional right to prison grievance procedures. Thus, defendants' alleged obstruction of such procedures is not independently actionable." Heleva v. Kramer, 214 Fed. App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F. 3d 641, 647 (7th Cir. 2001)); Pressley v. Johnson, 268 Fed. App'x 181, 184 (3d Cir. 2008) ("Pressley also complained about the investigation and processing of his inmate grievances. Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation"); Stringer v. Bureau of

---

[5](...continued)
average citizens, before an action taken against them is considered adverse").

Prisons, 145 Fed. Appx. 751, 753 (3d Cir. 2005).[6] Thus, defendants' alleged failure to properly address and process Plaintiff's administrative remedies is not actionable under § 1983.

H. Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.

---

[6] See also Olim v. Wakinekona, 461 U.S. 238, 250-251 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice [it] does not create an independent substantive right"); Hewitt v. Helms, 459 U.S. 460, 469 (1983) ("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves").

19

In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

I. Amendment of Complaint

This Court is dismissing with prejudice the due process claim for property loss, the Fourth Amendment search claim, and the First Amendment failure to properly respond to grievances claim. Plaintiff will not be granted leave to file an amended complaint with regard to these claims. However, because Plaintiff may be able to cure the defects in the conditions of confinement claim, medical care claim, access to courts claim, and retaliation claim by filing an amended complaint which on its face states a claim under 42 U.S.C. § 1983, this Court will grant Plaintiff 30 days to file same.

## V. CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed in forma pauperis, dismiss the federal claims in the Complaint, and decline to exercise supplemental jurisdiction.

_____
GARRETT E. BROWN, JR.
Chief Judge

Dated: JUNE 13, 2011